## Steinmets *against* Logan.

A defendant in ejectment, who makes no pretence of title and wishes to avoid a verdict for costs, must enter his disclaimer of record, either at the entry of the plea, or at a period sufficiently early to warn the plaintiff before the trial.

WRIT of error to the court of common pleas of *Alleghany* county.

The plaintiffs in error were the plaintiffs below. The case was an ejectment brought for the recovery of a tract of land containing one hundred and fifty acres. The defendant pleaded not guilty, and no special defence was taken for any part.

It was admitted on the trial, that the plaintiffs held under Jacob

[Steinmets v. Logan.]

Steinmets the elder, who commenced an actual settlement, in the month of March 1808, on the land, by virtue of which the land in controversy was claimed, but his house was not within the boundaries of the land claimed, but some short distance from the same. Jacob Steinmets, or his alienees have continued said settlement ever since.

In the month of April or May 1808, John Shuke, as tenant under the heirs of Nicholas Bausman, who claimed, under a sheriff's deed in 1801, the right of John M'Kee, commenced an actual settlement within the bounds of the land described in the ejectment, near the south side thereof, and continued to reside there for about twelve years, when the defendant entered under said heirs by purchase, and has continued to reside there ever since.

The whole of the vacant land at the time of the settlement of Jacob Steinmets, adjoining his settlement, including the land for which the ejectment is brought, amounted to about two hundred and fifty acres : that now claimed by defendant, including the part now in controversy, to one hundred and forty-two acres and one hundred and thirty-eight perches. The plaintiffs on the trial waived their right to all the land for which ejectment was brought, except thirty-nine acres and twelve perches, nearest their place of residence (*prout* diagram filed). A line about fifty-eight years old was found on the ground well marked, running between said thirty-nine acres and twelve perches, and the other land described in the ejectment, the right to which other land plaintiffs waived on the trial, and on which other land the defendant resides.

In the year 1822 the defendant had a survey made, by the deputy surveyor of the district, of the land described in the ejectment, including said thirty-nine acres and twelve perches ; a line was found between said thirty-nine acres and twelve perches, and other land claimed by plaintiffs by virtue of Jacob Steinmets's settlement, about forty-one years old. To this line the defendant claims, and according to it the survey was made for him in 1822.

There was contradictory testimony respecting the extent of Jacob Steinmets's claim at different times, and as to his satisfaction or dissatisfaction with the survey of defendant in 1822.

Henry Shuke occasionally made sugar at a sugar camp on the land in controversy during his lease. Jacob Steinmets then claimed it, and about two or three years before he (Shuke) left it, took the sugar camp from him.

The court below (Shaler, president) charged the jury, "that the land in controversy was an unimproved piece of ground lying between the improved ground of the plaintiffs and the enclosure of the defendant; that the unimproved ground was likewise unenclosed, and that both parties claimed it; that the state of the facts introduced a preliminary question as to whether an ejectment could be sustained by the plaintiffs, supposing them to have the title, unless a clear possession was shown in the defendant : in other words, a tract to

III.—V

[Steinmets v. Logan.]

which both parties claim title, lies between their improved lands; can either party, for the mere purpose of trying the question of title, elect to consider the other in possession, and throw the costs of an eject-ment upon him ? I am inclined to think he cannot; and a further difficulty would be created as to one having the title to the premises, considering himself out of possession, and on setting up the adver-sary title in possession for the purpose of trying the right—from this circumstance, that the law implies that the possession of the unim-proved and unenclosed ground is in him who has the title. Under these circumstances of the case, being one, if I may so speak, of va-cant possession, the plaintiffs cannot sustain their suit.

"As we are requested to give our opinion on the title itself, although not now necessary, I have no hesitation in saying that I believe the title to be in the defendant. It is the very common case of one set-tler having, by mere mistake, built his house over the line of an ad-joining tract; this mistake certainly would not deprive him of the tract on which he intended to settle, and on which his clearing and improvement are made; it clearly would give him no title to the tract on which he had built by accident, and over which his im-provement does not extend, and which was subject to a prior settle-ment right. It is true that twenty-one years' possession would give him title to whatever might be within his enclosure; but this right would not extend to unimproved land, although with a marked boundary. The verdict ought to be for the defendant."

To which charge the plaintiffs assign the following errors.

1. There was error in the charge of the court in stating to the jury, that an ejectment could not be sustained by the plaintiff, sup-posing him to have the title, unless a clear possession was shown in the defendant; although from the state of the facts alluded to by the court, it appeared the defendant claimed the land, and had a survey thereof made in the year 1822, and his boundaries marked and de-signated, and that the defendant resided within the boundaries of said survey, and on part of the land described in the ejectment.

2. That under the circumstances of the case, this was one of a vacant possession, and therefore the plaintiff cannot sustain an eject-ment.

*A. W. Foster*, for plaintiffs in error.
*Forward*, contra, declined arguing the case.

PER CURIAM.—Where the land is vacant, the mode of proceeding by a defendant, who makes no pretence of title, and wishes to avoid a verdict for costs, was indicated, though perhaps not distinctly, in Dietrich *v.* Mateer, 10 *Serg. & Rawle* 152. By the act of the 13th of April 1807, service of the writ is made evidence of the defendant's possession; but he is permitted to disprove it, having disclaimed the title. This disclaimer ought to appear of record, being made either at the entry of the plea, or at a period sufficiently early to warn the

plaintiff of the nature of the defence to be made at the trial. Where defence is taken for a part, there is necessarily a disclaimer of title to the residue; and the defendant will be entitled to a verdict, at least as to that, by showing that it was not in his possession. This construction is consistent with the object of the act: which is to compel the defendant to put his title in issue, or abandon it altogether ; and to make the form of the action, under the act of 1806, as advantageous in this particular as was its common law form, by which a claimant could compel the trial of title to a vacant tract by actually sealing a lease on the land. No disclaimer appears to have been entered here ; and the court ought to have put the cause on the question of title.

Judgment reversed, and a *venire de novo* awarded.